RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0137p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

CHRISTOPHER MOODY,

>        *Petitioner-Appellant,*

  *v.*

UNITED STATES OF AMERICA,

>        *Respondent-Appellee.*

No. 19-5015

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
Nos. 3:09-cr-00240-21; 3:17-cv-00611—Aleta Arthur Trauger, District Judge.

Decided and Filed:  May 6, 2020

Before:  GUY, THAPAR, and BUSH, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Seth A. Mohney, COVINGTON & BURLING LLP, Washington, D.C., for
Appellant.  Cecil W. VanDevender, UNITED STATES ATTORNEY'S OFFICE, Nashville,
Tennessee, for Appellee.

_____

## OPINION

_____

THAPAR, Circuit Judge.  Christopher Moody asks this court to unwind his federal
convictions.  But his habeas claims never should have reached us in the first place.  The district
court denied Moody's habeas petition but certified some of his claims for appeal.  Because
reasonable jurists could not doubt that the district court properly denied relief, we vacate the
certificate of appealability and dismiss the appeal.

## I.

Moody pled not guilty to a number of firearms and crack-cocaine charges. At his trial, the government produced a video of Moody cooking crack on his kitchen stove and waving a handgun while he mused about the ups and downs of life in "the game" (drug trafficking). For obvious reasons, Moody tried to keep this video away from the jury. But the court ruled that most of the video was admissible, and the admissible portions went to the jury.

Moody then tried to persuade the jury that the video was filmed more than five years before his indictment, putting it outside the statute of limitations. 18 U.S.C. § 3282(a). But in the end, the jury convicted Moody on all counts. Due to prior felony drug convictions, Moody received enhanced, mandatory-minimum life sentences on several counts. He appealed, mainly on evidentiary grounds relating to the video, but this court affirmed. *United States v. Moody*, 631 F. App'x 392 (6th Cir. 2015).

Later, Moody raised a new set of claims on collateral review. *See* 28 U.S.C. § 2255. The district court found that not only was each claim meritless, most of them were also procedurally defaulted (that is, forfeited without excuse). Still, the court authorized Moody to appeal some of his claims, and this appeal followed.

## II.

First, some background. For more than a century, Congress has imposed a gatekeeping process for federal habeas appeals. *See Barefoot v. Estelle*, 463 U.S. 880, 892 & n.3 (1983), *superseded by statute as recognized in Slack v. McDaniel*, 529 U.S. 473 (2000). Under current law, before appealing a prisoner must first get a certificate of appealability. 28 U.S.C. § 2253(c)(1). And to get a certificate, a prisoner must make "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). That means "showing that reasonable jurists could debate whether" relief should have been granted. *Slack*, 529 U.S. at 484. While this standard is not overly rigid, it still demands "something more than the absence of frivolity." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting *Barefoot*, 463 U.S. at 893). In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect.

Crucially, in applying this standard, a court must consider *not only* the merits of the underlying constitutional claim *but also* any procedural barriers to relief. *Buck v. Davis*, 137 S. Ct. 759, 777 (2017); *Slack*, 529 U.S. at 484–85; *see also Dufresne v. Palmer*, 876 F.3d 248, 254 (6th Cir. 2017). To put it simply, a claim does not merit a certificate unless *every independent reason to deny the claim is reasonably debatable*.

To see how this operates in practice, consider some examples. Suppose that a claim has arguable merit (or even obvious merit) yet is plainly barred by a procedural default. That claim should not receive a certificate. *E.g.*, *Dufresne*, 876 F.3d at 255–56; *Berry v. Warden, S. Ohio Corr. Facility*, 872 F.3d 329, 334 (6th Cir. 2017). Or consider a claim that a state court previously rejected on the merits. *See* 28 U.S.C. §2254(d). For that claim to warrant appeal, there must be a substantial argument that the state court's decision was not just wrong but *objectively unreasonable* under the stringent requirements of § 2254(d) (commonly known as "AEDPA deference"). *See Miller-El*, 537 U.S. at 341; *see also id.* at 349–50 (Scalia, J., concurring). If no fair-minded jurist (even one sympathetic to the claim) could doubt that the state-court decision was defensible, the claim should not be certified.

The same principle applies to all other procedural barriers—from exhaustion and nonretroactivity to timeliness and the second-or-successive restrictions. *See generally* 28 U.S.C. §§ 2244(b), (d), 2254(b)–(c), 2255(f), (h); *Teague v. Lane*, 489 U.S. 288 (1989). It also applies to alternative *merits* barriers: for instance, a court should not certify an ineffective-assistance-of-counsel claim where deficiency may exist but the lack of prejudice is indisputable (or vice versa). *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Again, a certificate is improper if *any* outcome-determinative issue is not reasonably debatable.

III.

Unfortunately, these standards have too often gone ignored. *See, e.g.*, *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001) (noting "a disturbing lack of uniformity" in applying these standards). This case is no different. When certifying Moody's claims for appeal, the district court's opinion failed to discuss the requirements for granting a certificate or to provide any reasoning. *See* R. 40, Pg. ID 256 ("The court will, however, issue a certificate of

appealability[.]"); *id.* at 257 ("The court will nonetheless grant a COA[.]"); *id.* at 260 ("The court will, however, grant a certificate[.]"). We cannot tell what standards governed these choices. The court may well have certified the claims before us just because they seemed better than frivolous—which is not enough. *Miller-El*, 537 U.S. at 338.

The strongest evidence that the district court applied an incorrect standard (or at best misapplied the correct one) is the claims themselves. Simply put, reasonable jurists wouldn't doubt the correctness of the district court's denial of these claims. Thus, no certificate was warranted.

To see why, consider the certified claims. Those claims fall into three groups: (1) Moody was deprived of his statute-of-limitations defense (violating due process); (2) the past convictions for his sentencing enhancements weren't charged in the indictment or found by the jury (violating his rights to indictment and trial by jury); and (3) his previous lawyers failed to raise the first two claims sooner (violating his right to effective assistance of counsel).[1] *See* U.S. Const. amends. V, VI; *Strickland*, 466 U.S. at 686. (Note that the *Strickland* claims serve two functions: not only are they potential grounds for relief, they are Moody's only hope of curing the procedural default barring his other claims. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).) None should have been certified.

A.

A defendant has the right to a meaningful defense, including the right to appropriate jury instructions on a defense theory. *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Barker v. Yukins*, 199 F.3d 867, 875 (6th Cir. 1999). Here, Moody argues that his key defense (the statute of limitations) was effectively nullified by (1) a one-word error in the statute-of-limitations jury instruction and (2) the phrasing of the verdict form. Neither claim is substantial.

---

[1]Moody also attempts to argue on appeal that his life sentences amount to cruel and unusual punishment in violation of the Eighth Amendment. But this claim is outside the certificate of appealability. Moody originally presented this claim in Count 6 of his amended § 2255 motion, a count not certified for appeal. True, Count 4 (which *was* certified) contained a fleeting reference to the Eighth Amendment. Yet that count was Moody's Fifth and Sixth Amendment challenge to the sentencing enhancements based on his prior convictions. It contained no substantive Eighth Amendment argument whatsoever. Habeas petitioners may not stretch certified claims to cover uncertified ones simply by padding them with surplus references to additional amendments. And anyway, Moody's Eighth Amendment claim is foreclosed. *See United States v. Hill*, 30 F.3d 48, 50–51 (6th Cir. 1994).

*The Jury Instruction.* Moody's first claim is based on a slip of the tongue. At one point in its oral instructions, the court told the jury that the government had to prove "that the crimes charged happened on or *before*," not *after*, the relevant cutoff date. R.* 2663, Pg. ID 14272 (emphasis added).[2] That was obviously a mistake.

Still, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). To establish such a violation, Moody must show two things: (1) the trial court's misstep made the statute-of-limitations instruction ambiguous; and (2) there is "a reasonable likelihood" (not just "a slight possibility") that the jury was actually misled. *Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009) (cleaned up). We look at the mistake's effect in the context of the full instructions and the entire record, not "in artificial isolation." *Id.* at 191 (cleaned up).

When we do that, Moody's claim clearly falters. Here is the statute-of-limitations instruction in full:

> The statute of limitations is a law that puts a limit on how much time the government has to obtain an indictment. No person shall be prosecuted, tried or punished for any offense unless the indictment is found within five years next after such offense shall have be[en] committed. The government filed the 11th Super[s]eding Indictment on November 13, 2013. The government must convince you beyond a reasonable doubt that the crimes charged happened on or before November 13, 2008. Thus, a conviction cannot be based upon conduct that occurred before this date.
>
> You may consider the defendant's conduct prior to the statute of limitations to evaluate the defendant's conduct within the statute of limitations and whether the conduct within the statute of limitations establishes the defendant's guilt beyond a reasonable doubt. You cannot use any pre–statute of limitations conduct for any other purpose.

R.* 2663, Pg. ID 14272–73. Ambiguous as a whole? Hardly. To see that the errant "before" didn't spoil this instruction, just take it sentence by sentence. The first two sentences explained how the statute of limitations works. Add the third sentence (the date of the indictment) and the jury could deduce that it could convict only if Moody committed the crimes *after* November

---

[2]"R.*" citations refer to docket entries in Moody's original criminal case, No. 3:09-cr-00240-21 (M.D. Tenn.).

13, 2008. When the fourth sentence mistakenly said the opposite, *the very next sentence after that* set matters straight, properly charging the jury *not* to convict for conduct before the cutoff date. And for good measure, the last two sentences reiterated that pre-cutoff conduct was only relevant to the extent that it shed light on *post*-cutoff conduct (because the latter was what really mattered). All told, the instruction just wasn't ambiguous. Any juror who considered it as a whole would have recognized the mistaken "before" as just that—a mistake.

Nor would it make a difference if (as Moody argues) the written instructions given to the jury contained the same mistake. We say "if" and "Moody argues" because we don't know for sure—the written instructions aren't in the record. But regardless, the mistake would have been no less obvious in print. So this factual dispute is beside the point.

What's more, even if the instruction could be considered ambiguous, there is no reasonable likelihood that the jury was misled. The closing arguments for both sides discussed the statute of limitations at length. And this discussion left no possible doubt about what time period a conviction had to be for. Here are some samples from the government's closing and rebuttal:

- "[T]he government's position is he certainly committed the offenses after November 13, 2008. . . . [Y]ou've got to find the elements of the offense occurred after November 13, 2008." R.* 2663, Pg. ID 14154.

- "[Y]ou have to find that the defendant used the house [to manufacture drugs] after November 13, 2008. Or had a gun. Basically late 2008, early 2009." *Id.* at 14155.

- "I'm telling you on behalf of the government, if you find that he didn't do this stuff after the November 13th date, acquit him." *Id.* at 14211.

And there were plenty more statements just like these. The bottom line: setting these clear statements against a one-word mistake in an otherwise correct instruction, it is wholly implausible that the jury was misled into convicting for conduct *before* November 13. All reasonable jurists would recognize this after even a slight review of the record.

*The Verdict Form.* Moody's next claim challenges the inquiries in the verdict form. For each count, the form asked the jury whether it found Moody guilty of committing that crime

during the time period alleged in the indictment, which sometimes included time-barred periods. For example, one question read:

> Do you find the defendant, Christopher Moody, guilty of using a place to manufacture or distribute a controlled substance under 21 U.S.C. § 856(a) at said location between in or around January 2008 through in or around December 2008?

R.* 2504, Pg. ID 12957. On its face, this question didn't separate time-barred conduct (before November 13) from conduct that was fair game (on or after November 13). Nor was the statute of limitations mentioned anywhere else in the form.

Constitutional error? No. After all, the verdict form didn't stand alone. It came with a user's manual: the jury instructions. So we evaluate the verdict form in the context of the instructions as a whole (the same way we evaluate individual statements in the instructions). *See Jones v. United States*, 527 U.S. 373, 393 (1999) ("[A]ny confusion created by the verdict forms was clarified when considered in light of the entire jury instruction." (cleaned up)); *see also, e.g.*, *Smith v. Spisak*, 558 U.S. 139, 143–49 (2010); *Penry v. Johnson*, 532 U.S. 792, 796–804 (2001). And as we've seen, the instructions adequately conveyed that the jury could convict *only* if it found that Moody committed the crimes on or after November 13, 2008. That was enough.

Moody resists this conclusion by appealing to *Yates v. United States*, 354 U.S. 298 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1, 8 (1978). But that case is inapposite. There, the Supreme Court simply held that: (1) one of two possible conviction theories was time-barred; (2) accordingly, the trial court erred by giving instructions that allowed a conviction on either theory; and (3) the error was reversible because it was "impossible" to tell which theory the jury had convicted on. *Yates*, 354 U.S. at 311–12. An important part of the Court's reasoning was that the jury instructions were "not sufficiently clear or specific" to support the inference "that the jury understood it must find [the non-time-barred theory] in order to convict." *Id.* at 311.

None of that (apart from certain conduct being time-barred) is true here. Again, on this record, the jurors all-but-certainly understood that they were only supposed to convict for

conduct after the cutoff date. The instructions "clear[ly]" and "specific[ally]" told them just that (notwithstanding the judge's slip of the tongue). *Id.* And even if the instruction was less than clear, the parties' closing arguments made it more than clear.

In sum, reasonable jurists would not debate the district court's conclusion that neither the instructions nor the verdict form stripped Moody of his statute-of-limitations defense.

B.

Next, Moody argues that his enhanced life sentences violate the Fifth and Sixth Amendments. Why? Because his past convictions weren't alleged in the indictment or found by the jury. The fatal flaw with this argument is that the Supreme Court has squarely rejected it. *Almendarez-Torres v. United States*, 523 U.S. 224, 228–32 (1998). And that precedent is still binding law. *United States v. Young*, 847 F.3d 328, 369 (6th Cir. 2017). Thus, this claim is foreclosed.

C.

Finally, Moody claims that his past lawyers' failure to raise each of these arguments was ineffective assistance of counsel (both at trial and on appeal). To establish ineffective assistance, Moody must show that failing to raise the earlier claims was both (1) objectively deficient and (2) prejudicial. *Strickland*, 466 U.S. at 687. Of course, failing to raise wholly meritless claims is neither deficient nor prejudicial. *See Bennett v. Brewer*, 940 F.3d 279, 286–87 (6th Cir. 2019); *Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011). Thus, given the weakness of his underlying claims, reasonable jurists wouldn't doubt that Moody's *Strickland* claims fall as well.

In fact, even if the underlying claims were a somewhat closer call, reasonable jurists *still* would not doubt that the *Strickland* claims fail on deficiency (regardless of prejudice). The Sixth Amendment "does not guarantee perfect representation" but only "reasonably competent" representation. *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (cleaned up). Thus, defense lawyers need not (and in fact *should* not) raise every colorable argument they can find. *See Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) ("Effective appellate counsel should not raise every nonfrivolous argument[.]"); *Wilson v. McMacken*, 786 F.2d 216, 219 n.3 (6th Cir. 1986)

(trial counsel need not make "every colorable objection"). Tough judgment calls about what to challenge and what to let slide are part of lawyering. Such decisions only become deficient— that is, incompetent—when no reasonable counsel would have made the same choice at the time. *Strickland*, 466 U.S. at 690. Here, even if Moody's claims could be called colorable, there's simply no argument that they were *so* strong that *every* reasonable defense attorney would have run with them. Thus, no reasonable jurist would dispute that Moody cannot show ineffective assistance.

This reasoning leads to an additional conclusion about the *earlier* claims. Remember, those claims are procedurally defaulted because Moody did not raise them on appeal. To rescue a claim from default, Moody needs to show (1) *cause* for not raising the claim on appeal and (2) *prejudice* from the error alleged in the claim. *See, e.g.*, *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). And Moody can only show *cause* by establishing his appellate counsel's ineffectiveness. *See Carrier*, 477 U.S. at 488. Because Moody can't establish ineffectiveness, he plainly can't show cause. Because he can't show cause, he plainly can't save his non-*Strickland* claims from default. Thus, those claims are barred *independently* of their failure on the merits. *See, e.g.*, *Benton v. Brewer*, 942 F.3d 305, 307–08 (6th Cir. 2019). And remember, it only takes one rock-solid barrier to block an appeal.

In the end, reasonable jurists would not question the district court's denial of relief on these claims. Accordingly, none of them should have been certified.

## IV.

The next question is what to do about it now. There are two basic options: (1) vacate the certificate as improvidently granted; or (2) simply decide the appeal on the merits, treating the certificate as water under the bridge. *See United States v. Marcello*, 212 F.3d 1005, 1007–08 (7th Cir. 2000); *see also Spencer v. United States*, 773 F.3d 1132, 1137–38 (11th Cir. 2014) (en banc); *Phelps v. Alameda*, 366 F.3d 722, 728 (9th Cir. 2004); *Bradley v. Birkett*, 156 F. App'x 771, 773–75 (6th Cir. 2005) (collecting unpublished cases). Choosing between these options is a matter of discretion. *Marcello*, 212 F.3d at 1007–08.

What complicates the choice here is timing.  Had the government moved to dismiss the certificate before briefing, we could have (at the very least) remanded for the district court to clarify and maybe rethink its analysis.  *See, e.g.*, *Porterfield*, 258 F.3d at 487.  But that didn't happen and the case has now been fully briefed.  In similar cases, this court has repeatedly picked option two but used dicta to reemphasize the proper standards for a certificate. *See, e.g.*, *Webb v. Mitchell*, 586 F.3d 383, 400–01 (6th Cir. 2009); *Frazier v. Huffman*, 343 F.3d 780, 788–89 (6th Cir. 2003); *White v. Kapture*, 42 F. App'x 672, 673 (6th Cir. 2003); *Channels v. McLemore*, 34 F. App'x 153, 154 (6th Cir. 2002).  The thinking here is that "considerations of judicial economy" tend to discourage post-briefing review of a certificate.  *Porterfield*, 258 F.3d at 485.  Still, this court has vacated at least two certificates even after the briefs were in.  *See Coleman v. Bergh*, 804 F.3d 816, 819 (6th Cir. 2015); *Dillard v. Burt*, 194 F. App'x 365, 367–69 (6th Cir. 2006).  For a few reasons, that's the right choice here as well.

After all, the standards for a certificate are no mere technicality.  Quite the contrary. By authorizing extra appeals, improper certificates add to the "profound societal costs" of habeas litigation while sapping limited public resources.  *Calderon v. Thompson*, 523 U.S. 538, 554 (1998) (quoting *Smith v. Murray*, 477 U.S. 527, 539 (1986)).  For one, they divert our time and attention from the cases Congress *actually* meant us to hear, often leading us to appoint counsel and schedule argument in cases that we later find to be insubstantial.  For another, they require state and federal government attorneys to devote *their* time and attention to defending appeals that should never have existed.  Plus, they may even harm those habeas petitioners whose claims really *do* merit an appeal because it could "prejudice the occasional meritorious [claim] to be buried in a flood of worthless ones."  *Brown v. Allen*, 344 U.S. 443, 537 (1953) (Jackson, J., concurring).  In short, it's critical that courts follow the rules Congress set.

Despite this, widespread neglect of those rules is a longstanding problem.  Many certificates are still granted on claims that reasonable jurists simply would not find debatable and for reasons that do not track the proper analysis.  (Not considering procedural barriers is a common mistake.)  The certificate here is a perfect example of how this problem persists.  Still, the lack of *any* explanation for the certificate (or even a reference to the requirements) makes this

case *particularly* troubling.  Given that (and given dicta's proven failure to get this serious problem under control), vacating this certificate is the least we can do.

That the government did not move for dismissal doesn't change this conclusion.  To be sure, the appropriate time to raise defects in the certificate is before briefing.  But we have discretion to excuse forfeitures and compelling reasons to do so here.  Judicial economy will be best served in the long run by faithfully applying the requirements for habeas appeals. *Cf. United States v. Baker*, 807 F.2d 1315, 1321 (6th Cir. 1986) (recognizing that we may consider forfeited issues to, among other things, "promote procedural efficiency" (cleaned up)). Finally, vacating the certificate here won't prejudice Moody.  We have considered his arguments, and if we did not dismiss the appeal we would simply affirm.[3]  In the end, the choice is clear.

We vacate the certificate of appealability as improvidently granted and dismiss the appeal.

---

[3]In saying this, we're mindful of *Buck*'s and *Miller-El*'s instructions not to conflate the threshold certificate inquiry with the final merits adjudication. *See Buck*, 137 S. Ct. at 774; *Miller-El*, 537 U.S. at 336–38.  In each of those cases, the circuit court had denied an *initial* application for a certificate and (in doing so) had improperly leapt to a full merits analysis of claims over which it did not yet have jurisdiction. *Buck*, 137 S. Ct. at 774; *Miller-El*, 537 U.S. at 336–37.  The posture here is different:  Moody already received a certificate and his claims have been fully briefed in this court.  That gave us jurisdiction to examine his claims on the merits (unlike the *Buck* and *Miller-El* courts). *See Gonzalez v. Thaler*, 565 U.S. 134, 143 (2012).

When we did so, we concluded that the district court rightly denied relief. *Separately*, it became clear that reasonable jurists would not doubt that conclusion (even on a threshold inquiry).  These two conclusions, though clearly related, are distinct. *See Buck*, 137 S. Ct. at 774.  So distinct, in fact, that they support two different dispositions:  affirmance and dismissal.  The question now is simply which disposition is more appropriate.  For the reasons given, the answer is dismissal.