RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0171p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

CHRISTOPHER ALAN MITCHELL,

        *Petitioner-Appellant,*

  *v.*

                           No. 20-6031

UNITED STATES OF AMERICA,

        *Respondent-Appellee.*

───────────────

Appeal from the United States District Court for the Eastern District of Tennessee at Greeneville.
Nos. 2:09-cr-00017-1; 2:14-cv-00183—J. Ronnie Greer, District Judge.

Argued: April 28, 2022

Decided and Filed: August 5, 2022

Before: McKEAGUE, GRIFFIN, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Erin P. Rust, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Erin P. Rust, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

CHAD A. READLER, Circuit Judge. Almost a decade ago, inmate Christopher Alan Mitchell moved to vacate his sentence on the ground that he had been erroneously designated as a career offender under the Armed Career Criminal Act. At first, Mitchell's efforts bore fruit.

Relying on then-existing law, the district court granted Mitchell's 28 U.S.C. § 2255 motion, vacated his sentence, and set the case for resentencing. The resentencing process began but, before it was completed, developments in other cases revealed that Mitchell was a career offender after all. So the court vacated the order granting relief, denied Mitchell's § 2255 motion, and reinstated the original sentence.

Notwithstanding the denial of his § 2255 motion, Mitchell claims that the district court enjoyed the discretion to resentence him de novo. We disagree. After finding Mitchell ineligible for § 2255 relief, the court was required to reinstate his original sentence. Accordingly, we affirm the district court's judgment. We also decline Mitchell's request to expand his certificate of appealability.

## I.

This case involves two mainstays of our docket: postconviction relief under 28 U.S.C. § 2255 and the Armed Career Criminal Act. Beginning with the latter, the Armed Career Criminal Act imposes a 15-year mandatory minimum sentence where a defendant possesses a firearm in violation of 18 U.S.C. § 922(g) and has at least three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The phrase "violent felony" includes "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary." § 924(e)(2)(B).

Over a decade ago, Mitchell pleaded guilty to possessing a firearm as a felon in violation of § 922(g). He also had three prior convictions relevant here: two for Tennessee aggravated burglary in violation of Tenn. Code Ann. § 39-14-403 and one for Class D Tennessee burglary in violation of Tenn. Code Ann. § 39-14-402. Under then-controlling Sixth Circuit precedent, Tennessee aggravated burglary was a violent felony under the Armed Career Criminal Act. *See United States v. Nance*, 481 F.3d 882, 888 (6th Cir. 2007); *see also United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017) (holding that Class D Tennessee burglary is a violent felony). In view of this criminal history, the district court sentenced Mitchell to § 924(e)'s 15-year mandatory minimum. Mitchell did not appeal.

Several years later, Mitchell moved to vacate his sentence under 28 U.S.C. § 2255. He argued that his prior convictions for Tennessee aggravated burglary did not constitute violent felonies given recent developments in Armed Career Criminal Act jurisprudence. Indeed, as Mitchell's motion was pending before the district court, our en banc Court held that Tennessee aggravated burglary is not a violent felony under § 924(e). *See United States v. Stitt (Stitt I)*, 860 F.3d 854, 856 (6th Cir. 2017) (en banc) (overruling *Nance*), *rev'd*, 139 S. Ct. 399 (2018). Based on *Stitt I*, the parties agreed that Mitchell was not subject to the Armed Career Criminal Act's 15-year mandatory minimum, as two of his three qualifying offenses were for Tennessee aggravated burglary. So the district court granted Mitchell's § 2255 motion, vacated his sentence, and set the case for resentencing.

After Mitchell's resentencing began but before it was completed, the district court stayed the proceedings to await the Supreme Court's decision in the *Stitt I* appeal. Ultimately, the Supreme Court reversed *Stitt I*, holding that "[t]he relevant language of the Tennessee [aggravated burglary] . . . statute[] falls within the scope of generic burglary's definition" for purposes of § 924(e). *United States v. Stitt (Stitt II)*, 139 S. Ct. 399, 406 (2018). On the heels of *Stitt II*, we foreclosed further challenges to Tennessee aggravated burglary's status as a violent felony under the Armed Career Criminal Act in *Brumbach v. United States*. *See* 929 F.3d 791, 794 (6th Cir. 2019) (holding that *Nance*, which predated *Stitt I*, is "again the law of this circuit").

These decisions notwithstanding, Mitchell maintained before the district court that neither Tennessee aggravated burglary nor Tennessee burglary constitutes a violent felony. He also claimed that the district court improperly relied on facts from state court records to determine that he committed his burglaries "on occasions different from one another." § 924(e)(1). Concluding that our precedent foreclosed Mitchell's arguments, the district court vacated the order granting Mitchell's § 2255 motion, denied the motion, and reinstated the original sentence.

Mitchell moved for reconsideration. In his motion, Mitchell asked the district court to "finish the resentencing hearing" and order his sentence to run concurrently with a Tennessee state sentence he was then serving. The district court denied Mitchell's motion and, in addition, declined to issue a certificate of appealability. We later granted Mitchell a certificate of

appealability to challenge the district court's reinstatement of his original sentence. *See Mitchell v. United States*, No. 20-6031 (6th Cir. June 17, 2021) (order).

## II.

A. Mitchell's primary argument on appeal is that the district court enjoyed the discretion to resentence him even after denying his § 2255 motion. Why? Because, says Mitchell, the court had previously vacated his original sentence. And during resentencing, Mitchell adds, the court must entertain his request for concurrent sentences.

That takes us to the other mainstay of our docket, 28 U.S.C. § 2255. Section 2255 affords a federal prisoner a narrow opportunity to challenge his earlier criminal proceedings. The statute authorizes the prisoner to move the court to "vacate, set aside or correct the sentence" "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." § 2255(a). In evaluating a § 2255 motion, the court "initially considers whether . . . the petitioner is entitled to any § 2255 relief." *Braden v. United States*, 817 F.3d 926, 929 (6th Cir. 2016) (citation omitted). If so, the court must vacate the judgment and select an appropriate remedy, such as resentencing. § 2255(b); *see also Ajan v. United States*, 731 F.3d 629, 631 (6th Cir. 2013). Otherwise, the motion must be denied. *See Snider v. United States*, 908 F.3d 183, 189 (6th Cir. 2018) (noting that a court may grant relief "only" where the prisoner satisfies § 2255(a)).

But how should a court proceed in the unusual circumstance confronting the district court here, where the court, after previously granting Mitchell's § 2255 motion, later vacated that order before any remedy was awarded because he was not eligible for relief? The appropriate course is the one the district court followed: to reinstate the original sentence.

The reasoning is straightforward. A district court does not enjoy "inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009); *see also* 18 U.S.C. § 3582(c) (stating the general rule that a court "may not modify a term of imprisonment once it has been imposed"). So unless Mitchell could demonstrate some

grounds for relief, the district court was not authorized to modify his sentence. Mitchell's asserted basis for relief was § 2255. But he failed to satisfy § 2255's demanding requirements. The district court correctly observed that our case law forecloses "[a]ny reasonable possibility" that Mitchell might successfully challenge his career offender status and thus denied his § 2255 motion. *See Brumbach*, 929 F.3d at 794; *Ferguson*, 868 F.3d at 515. In view of that denial, Mitchell was not "entitled to any § 2255 relief." *Braden*, 817 F.3d at 929 (citation omitted). And as Mitchell identified no other grounds for relief, the district court lacked the authority to adjust Mitchell's sentence. *See United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010) ("If the prisoner fails to show that his sentence is unlawful on one of the specified grounds under [§ 2255], 'the court must deny the petition.'" (citation omitted)). In other words, a prisoner who (like Mitchell) seeks relief under § 2255 but lacks a basis for relief under that statute must end those proceedings with his original sentence intact. *See Washington*, 584 F.3d at 700; § 3582(c). And the only way to ensure that no change occurred here was to reinstate Mitchell's original sentence.

This approach squares with our practice following vacatur of a district court's order granting postconviction relief under § 2255. In that setting, we consistently "direct the district court to enter the original sentence, rather than issue a general remand." *United States v. Tigue*, 811 F. App'x 970, 975 (6th Cir. 2020). It is thus no surprise that in cases where *Stitt II* eliminated the basis for § 2255 relief, we have consistently ordered prisoners' original sentences reinstated—not resentencing. *See, e.g., United States v. Brown*, 957 F.3d 679, 681 (6th Cir. 2020); *Brumbach*, 929 F.3d at 795; *Gilliam v. United States*, 804 F. App'x 387, 389 (6th Cir. 2020); *United States v. Morris*, 812 F. App'x 341, 346 (6th Cir. 2020); *United States v. O'Dell*, 813 F. App'x 180, 182 (6th Cir. 2020); *Tigue*, 811 F. App'x at 975; *United States v. McClurg*, 811 F. App'x 945, 946 (6th Cir. 2020); *Booker v. United States*, 810 F. App'x 443, 445 (6th Cir. 2020); *United States v. Bateman*, 780 F. App'x 355, 357 (6th Cir. 2019); *Greer v. United States*, 780 F. App'x 352, 353 (6th Cir. 2019); *United States v. Crutchfield*, 785 F. App'x 321, 322 (6th Cir. 2019); *United States v. Bawgus*, 782 F. App'x 408, 408 (6th Cir. 2019); *Bell v. United States*, 773 F. App'x 832, 833 (6th Cir. 2019). And we have previously declined to address arguments that the district court erred during resentencing where the court "lacked grounds for granting [the prisoner's] motion to vacate" in the first place. *United States v. Doyle*, 631 F.3d

815, 817 & n.1 (6th Cir. 2011). So too here. Once the district court denied Mitchell's § 2255 motion, there was no basis for the court to consider his argument for concurrent sentences.

Any other result, it bears noting, would undermine § 2255's limits on postconviction relief. To see why, recall that Mitchell asked the district court to resentence him to a 15-year term concurrent with his Tennessee sentence. But Mitchell "is not now, nor did he . . . argue [in the district court] that the district court's failure to run his original sentence concurrent with his pending state charges renders that original sentence unlawful under 28 U.S.C. § 2255." Simply put, Mitchell has not held up his end of the bargain that § 2255 seeks to strike; he asks to avail himself of the statute's benefits—resentencing under current law to reduce the time he spends in prison—without satisfying its requirements. Congress, it bears reminding, chose to authorize resentencing only in the "narrow set of circumstances" specified by § 2255. *Bullard v. United States*, 937 F.3d 654, 658 (6th Cir. 2019). Mitchell's case is not one of them.

B. Mitchell resists this conclusion on several fronts. He first claims that the district court had to resentence him because the court had previously vacated his original sentence. But Mitchell ignores the fact that the district court later vacated the order vacating Mitchell's original sentence, meaning the original order affords him no relief. *See Vacate*, *Black's Law Dictionary* (11th ed. 2019) (defining "vacate" as "nullify or cancel; make void; invalidate"); *see also Shabazz v. United States*, 912 F.3d 73, 78 (2d Cir. 2019) ("The district court's judgment on Shabazz's [§ 2255] petition vacated his original sentence, substituting the court's new, lesser sentence. The effect of our ruling vacating that judgment is to reinstate the original sentence."). Nor is there any doubt that the district court had the authority to enter the second order. Orders vacating sentences under § 2255, after all, are interlocutory where resentencing has yet to occur. *See United States v. Lawrence*, 555 F.3d 254, 258 (6th Cir. 2009) (citing *Andrews v. United States*, 373 U.S. 334, 338–40 (1963)). And district courts may "reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) (citation omitted).

Equally unavailing is Mitchell's suggestion that *Stitt II* required the district court to consider his career offender status "as part of his resentencing." Here, Mitchell puts the cart before the horse. The district court had to consider Mitchell's career offender status to determine

whether he qualified for relief under § 2255 *before* resentencing him or otherwise altering his sentence.  *See Braden*, 817 F.3d at 929.  And as the court concluded that Mitchell is a career offender under the Armed Career Criminal Act, resentencing could not occur.  *See Pettiford*, 612 F.3d at 277.

Nor are we persuaded by Mitchell's invocation of *Kitts v. United States*, 812 F. App'x 336 (6th Cir. 2020), and *Dillard v. United States*, 768 F. App'x 480 (6th Cir. 2019).  True, in *Kitts* and *Dillard* we remanded for further proceedings after reversing orders granting § 2255 relief.  We did so, however, for the narrow purpose of allowing the district court to determine whether the prisoner was otherwise entitled to § 2255 relief.  *See Kitts*, 812 F. App'x at 340–41 ("*Cradler*'s impact on whether Kitts's second-degree burglary convictions qualify as [Armed Career Criminal Act] predicate offenses requires further examination, and this question must be addressed before it can be determined whether Kitts is subject to the ACCA's mandatory minimum."); *Dillard*, 768 F. App'x at 487 (remanding for a determination as to whether the prisoner's prior convictions were violent felonies in view of a change in our case law).  Here, on the other hand, no "question must be addressed before it can be determined whether [Mitchell] is subject to the ACCA's mandatory minimum"—he is.  *Kitts*, 812 F. App'x at 340–41; *see also Brumbach*, 929 F.3d at 794; *Ferguson*, 868 F.3d at 515.  Indeed, Mitchell acknowledges that his concurrent sentences argument affords no independent basis for relief under § 2255.  Because Mitchell lacks any viable § 2255 claim, remand would serve no purpose.

III.

Mitchell also asks us to expand his certificate of appealability.  He seeks permission to argue that the district court violated the Sixth Amendment by relying on facts from *Shepard* documents (charging instruments, plea agreements, jury instructions, and similar materials, *see Shepard v. United States*, 544 U.S. 13, 16 (2005)), as opposed to a jury's findings, to determine that his prior burglary offenses occurred "on occasions different from one another." § 924(e)(1).

The threshold rule is that "an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255" without a certificate of appealability.  28 U.S.C. § 2253(c)(1).  A certificate of appealability, in turn, "may issue . . . only if the applicant has

made a substantial showing of the denial of a constitutional right." § 2253(c)(2). That means Mitchell must "show[] that reasonable jurists could debate whether" the district court should have granted relief. *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

When deciding whether to issue a certificate of appealability, we consider not only the substantive merits of Mitchell's claim, but also any potential procedural hurdles that would bar the requested relief. *See Slack*, 529 U.S. at 484–85. After all, no reasonable jurist could conclude that relief should have been granted on a procedurally barred claim. *Buck v. Davis*, 137 S. Ct. 759, 777 (2017); *Moody*, 958 F.3d at 488 (collecting cases).

One procedural barrier that clouds Mitchell's request for a certificate of appealability is his failure to raise his Sixth Amendment argument in a direct appeal. That omission customarily means we will consider the issue to have been procedurally defaulted. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). We enforce the procedural default rule to conserve judicial resources and promote the finality of judgments by funneling challenges to a conviction and sentence into a single appeal. *See id.* Yet notwithstanding those weighty considerations, we may excuse a prisoner's default if he "show[s] (1) *cause* for not raising the claim on appeal and (2) *prejudice* from the error alleged in the claim." *Gatewood v. United States*, 979 F.3d 391, 394 (6th Cir. 2020) (citation omitted).

Beginning with the first element, cause exists if a claim "is so novel that its legal basis [was] not reasonably available to counsel" during the original proceedings. *Bousley v. Untied States*, 523 U.S. 614, 622 (1998) (citation omitted). In other words, a claim is novel if, "at the time of [the] default, the legal tools, *i.e.*, case law, necessary to conceive and argue the claim were not yet in existence and available to counsel." *Gatewood*, 979 F.3d at 395 (citation omitted). But a claim that another defendant raised before the petitioner's proceedings is not novel, for, as should be self-evident, "the tools required to conceive it must have existed" by then. *Id.*

Novelty does not describe Mitchell's argument that the Sixth Amendment forbids district courts from using *Shepard*-document-derived facts to find that prior convictions occurred on

different occasions. The tools necessary to resolve what Mitchell describes as a violation of *Apprendi*'s "bedrock rule" of jury factfinding, as *Apprendi* itself reflects, have existed since at least 2000, when that decision issued. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). Confirming as much, several additional cases Mitchell relies upon also predate his sentencing. *See Nijhawan v. Holder*, 557 U.S. 29 (2009); *United States v. Hayes*, 555 U.S. 415 (2009). So do other cases where defendants raised similar arguments. *See, e.g.*, *United States v. Hill*, 440 F.3d 292, 298 (6th Cir. 2006); *United States v. Humphries*, 308 F. App'x 892, 897 (6th Cir. 2009). The law supporting Mitchell's Sixth Amendment claim was therefore "reasonably available" to him during the original proceedings. *Bousley*, 523 U.S. at 622 (citation omitted).

Alternatively, cause exists where raising the claim on direct appeal would have been futile because then-existing Supreme Court precedent "decisively foreclosed" the claim. *Gatewood*, 979 F.3d at 396 (citation omitted). But this basis for excusing Mitchell's procedural default is likewise no oasis for him, as he identifies no then-controlling Supreme Court precedent squarely barring his claim. *Cf. Apprendi*, 530 U.S. at 489 (noting "that a logical application of our reasoning today should apply" to future disputes about the Sixth Amendment's jury factfinding requirement); *Descamps v. United States*, 570 U.S. 254, 270 (2013) (faulting the district court for doing "just what we have said it cannot: rely on its own finding about a non-elemental fact to increase a defendant's maximum sentence"). To be sure, we have consistently rejected similar arguments. *See, e.g.*, *Hill*, 440 F.3d at 298–99; *Humphries*, 308 F. App'x at 899. But the futility exception does not apply to claims foreclosed by mere "middle-management judge[s]." *Thomas More L. Ctr. v. Obama*, 651 F.3d 529, 553 (6th Cir. 2011) (Sutton, J., concurring in part), *abrogated by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012); *see also Wright v. Spaulding*, 939 F.3d 695, 709 n.3 (6th Cir. 2019) (Thapar, J., concurring) (explaining that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time" because "courts can, and do, rethink their own precedents" (quoting *Bousley*, 523 U.S. at 623)); *Cvijetinovic v. Eberlin*, 617 F.3d 833, 839 & n.7 (6th Cir. 2010). Indeed, not "[e]ven 'the alignment of the circuits against a particular legal argument'" excuses a prisoner's default. *Gatewood*, 979 F.3d at 396 (citation omitted).

For these reasons, Mitchell cannot establish cause to excuse his default. And because Mitchell's Sixth Amendment claim "is plainly barred by a procedural default," no certificate of appealability may issue. *Moody*, 958 F.3d at 488.

As Mitchell sees things, jurists of reason could debate his Sixth Amendment claim because, to his eye, the Supreme Court is "clearly interested" in the issue. That argument, however, goes to the merits, rather than procedure. Nor, in any event, is it a strong merits argument. Perhaps the Supreme Court will take up the issue one day, as Mitchell forecasts. *Cf. Wooden v. United States*, 142 S. Ct. 1063, 1068 n.3 (2022) (reserving the question). But as of now, the Supreme Court has not done so. That leaves our precedent as the proper reference point. And that precedent bars Mitchell's claim—a point Mitchell, to his credit, recognizes. *See United States v. Belcher*, --- F.4th ---, 2022 WL 2682106, at *2 (6th Cir. 2022); *United States v. Hennessee*, 932 F.3d 437, 442–44 (6th Cir. 2019). It follows that he is not eligible for a certificate of appealability. *See Hamilton v. Sec'y, Fla. Dep't of Corr.*, 793 F.3d 1261, 1266 (11th Cir. 2015) ("[N]o COA should issue where the claim is foreclosed by binding circuit precedent 'because reasonable jurists will follow controlling law.'" (citation omitted)).

Even if Mitchell had established cause for excusing his default, the district court's purported error did not prejudice him. At base, Mitchell claims the government was required to prove the "how, when, and where" of his prior offenses to a jury. But even then, he offers no reason to doubt the accuracy of his *Shepard* documents (here, Tennessee indictments and judgments). And as those documents reflect, Mitchell committed three burglaries, each six months apart from the others, of different buildings with different victims. What is more, Mitchell confirmed the dates of these burglaries in the factual basis for his guilty plea to the felon-in-possession charge. Against this backdrop, we are confident a jury would find that the crimes were committed "on occasions different from one another," as that phrase is used in § 924(e)(1). *See Wooden*, 142 S. Ct. at 1070–71 (adopting a "multi-factored" framework for the different-occasions inquiry but noting that, "[f]or the most part, applying this approach will be straightforward and intuitive"); *see also id.* at 1079–80 (Gorsuch, J., concurring in the judgment) (cataloguing the "many and disparate" "potentially relevant factors" that, under the majority opinion's approach, supply "a judicial gloss on the statute's terms"). Nor, for that matter, has

Mitchell developed any argument to the contrary. So use of the *Shepard* documents, even if improper, did not cause "actual prejudice." *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (citation omitted); *see also Hilliard v. United States*, 157 F.3d 444, 450 (6th Cir. 1998); *cf. United States v. King*, 272 F.3d 366, 379–80 (6th Cir. 2001) (holding that potential *Apprendi* error related to drug quantity findings did not affect substantial rights on plain error review where undisputed evidence established that the drugs' weight exceeded the statutory threshold).

Nor, as Mitchell suggests, would *Wooden* itself be a basis for us to expand his certificate of appealability. Setting aside the fact that his *Wooden*-based claim appears meritless, *Wooden* decided a matter of statutory interpretation, not constitutional law. *See* 142 S. Ct. at 1069, 1072. The decision therefore affords no avenue for Mitchell to obtain a certificate of appealability. *See* § 2253(c)(2) (requiring "a substantial showing of the denial of a *constitutional* right" (emphasis added)); *Wingate v. United States*, 969 F.3d 251, 262 (6th Cir. 2020).

## IV.

We affirm the judgment of the district court and decline to expand Mitchell's certificate of appealability.