RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0273p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ALLANAH T. BENTON,

     *Petitioner-Appellant,*

*v.*

SHAWN BREWER, Warden,

     *Respondent-Appellee.*

> No. 18-1869

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-13648—Denise Page Hood, Chief District Judge.

Argued:  October 22, 2019

Decided and Filed:  November 6, 2019

Before:  CLAY, THAPAR, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:**  Anna R. Rapa, Mears, Michigan, for Appellant.  Jared D. Schultz, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.  **ON BRIEF:**  Jared D. Schultz, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.  Allanah Benton, Ypsilanti, Michigan, pro se.

───────────────

## OPINION

───────────────

THAPAR, Circuit Judge.  Allanah Benton alleges that her defense attorney's bad advice made her pass up a favorable plea deal.  But she did not timely raise her claim and has not offered a good excuse for not raising it.  Thus, she cannot obtain federal habeas relief. We affirm.

I.

Benton is a former schoolteacher who was indicted for having sex with a twelve-year-old student.  She went to trial and testified that she was innocent.  But a Michigan jury disbelieved her and found her guilty.  The judge sentenced her to twenty-five to thirty-eight years' imprisonment.  Benton then traded in her two trial lawyers for new appellate counsel, who raised several constitutional and evidentiary arguments.  But her conviction was affirmed.

Six months later, the Supreme Court handed down its decision in *Lafler v. Cooper*, 566 U.S. 156 (2012).  There, the Court held that defendants could make out a claim of ineffective assistance of counsel by proving that their lawyer's incompetence caused them to reject a favorable plea offer.  *Id.* at 174.  Benton returned to the trial court with a motion for postconviction relief, alleging that had happened to her.  She filed an affidavit stating that on the first morning of her trial, her attorney Michael Cronkright told her she had twenty minutes to decide whether to accept a brand-new plea offer.  The deal was good:  a year in jail for a guilty plea to a lesser charge.  Yet Benton was concerned:  if she took the deal, would she lose custody of her infant children?  According to Benton, Cronkright told her that she would.  So she turned the deal down.  But, Benton claimed, she would have accepted the plea had Cronkright conveyed that the termination of her parental rights would not be automatic—that is, that the state would have to begin termination proceedings and that a judge might rule in her favor.

Did all this happen?  Unclear.  Benton and Cronkright's pretrial conversation was off the record.  Only one snippet of the record, a transcript from a pretrial hearing two days earlier, alludes to any discussion of a plea deal.  And that transcript reveals precious little about where plea talks stood at the time.

But Benton faced a hurdle independent of the evidence.  To get relief on her belated claim, Michigan procedural law required Benton to show not only that the claim had merit but also (1) that she had good cause for failing to raise it on direct appeal and (2) that she was actually prejudiced by Cronkright's alleged ineffectiveness.  Mich. Ct. R. 6.508(D)(3)(a)–(b).  To show cause, Benton's appellate counsel, who was still representing her in the postconviction proceedings, offered to stipulate to his own ineffectiveness on direct appeal.

The trial court ruled that Benton failed to meet her procedural burden.  It also rejected her claim on the merits.  In short, the trial court was not convinced either that Benton received a definite plea offer or that she would have accepted the plea (given her protestations of innocence).  Michigan's higher courts declined to review the ruling.

So Benton, now proceeding pro se, filed a federal habeas petition.  The district court rejected her claim on the merits, largely tracking the state trial court's reasoning.  This court then granted a certificate of appealability.

## II.

Benton's ineffective-assistance claim stumbles over what lawyers call "procedural default," an arcane-sounding term for a simple idea.  While state courts (just like federal ones) must protect defendants' rights, they also may insist that defendants present their arguments on time and according to established procedures.  So a federal court usually may not review a state prisoner's habeas claim if (1) the prisoner broke a state procedural rule, (2) the state court enforced the rule, and (3) the procedural forfeiture was an adequate and independent ground for denying relief.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Comity and federalism demand nothing less.  Still, a federal court may review a defaulted claim if the petitioner shows (1) good cause for the default and actual prejudice from the claimed error or (2) that she is actually innocent of the crime.  *See Sawyer v. Whitley*, 505 U.S. 333, 338–39 (1992).

Benton does not dispute her procedural default.  And for good reason.  She didn't raise her claim on direct appeal as Michigan law requires.  *See* Mich. Ct. R. 6.508(D)(3); *see also generally* Mich. Ct. R. 7.212.  The state trial court relied on that rule in denying her postconviction motion.  And the rule is an adequate and independent state ground.  *See, e.g.*, *Dufresne v. Palmer*, 876 F.3d 248, 255 (6th Cir. 2017) (per curiam); *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012); *Ivory v. Jackson*, 509 F.3d 284, 292–93 (6th Cir. 2007).

Instead, Benton aims to excuse her default.  She does not argue that she is actually innocent, but only attempts to show cause and prejudice.  But that argument fails at the first step—cause.  Benton offers two reasons for not raising her claim on appeal:  (1) *Lafler* was not yet decided and (2) her appellate counsel was ineffective.  Neither holds up.

*Novelty.* Sometimes the novelty of a claim is good cause for not raising it sooner. *Reed v. Ross*, 468 U.S. 1, 16 (1984). But not often and not here. For novelty to amount to cause, the bar is a high one—the claim must have been "so novel that its legal basis [was] not reasonably available" at the time of default. *Id.*

*Lafler* was far from such a sea change. Long before *Lafler*, this circuit lent an ear to defendants who claimed that their counsel's deficient advice caused them to reject favorable plea deals. *See, e.g.*, *Magana v. Hofbauer*, 263 F.3d 542, 547 (6th Cir. 2001). Indeed, *Lafler* came to the Court on certiorari from a 2010 decision of this court granting relief on that very ground. *See Cooper v. Lafler*, 376 F. App'x 563 (6th Cir. 2010). So just because *Lafler* was decided in 2012, that doesn't mean Benton (or, more accurately, her lawyer) "lacked the tools to construct" her claim in her 2011 appeal. *Engle v. Isaac*, 456 U.S. 107, 133 (1982). Quite the contrary.

*Appellate counsel's ineffectiveness.*[1] Another way to show cause for a default is to show that appellate counsel's failure to raise the issue was ineffective assistance in its own right. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). But the petitioner has the burden to prove ineffective assistance. *See Harrington v. Richter*, 562 U.S. 86, 104 (2011). And Benton cannot satisfy her burden with nothing—which is what the evidence of her appellate counsel's ineffectiveness amounts to.

That evidence consists solely of her appellate counsel's offer to stipulate to his own ineffectiveness. But that offer contained no concrete facts about counsel's alleged ineffectiveness or (for that matter) about *any* aspect of his performance in Benton's appeal. And in evidentiary terms, a threadbare "stipulation" by a nonparty counts for nothing at all. When one party has the burden of proving an issue, *the opposing party* can concede that issue and lift the first party's burden. But no one else can do so *in lieu of* the opposing party. Including the person whose conduct the issue is about.

---

[1]Benton did not raise this argument for cause in her federal habeas petition—there, she relied only on the fact that *Lafler* came out six months after her direct appeal was decided. But Benton refers to this argument in her briefs, the state does not suggest that she has forfeited it, and considering it does not complicate our task. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

Ineffective-assistance claims are no exception. *See, e.g.*, *Ebert v. Gaetz*, 610 F.3d 404, 415 (7th Cir. 2010) (state court properly ignored counsel's "assessment of his own performance as constitutionally ineffective"); *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992) (attempts to "admit ineffectiveness" carry "no substantial weight"). So here, appellate counsel's attempt to establish his own ineffectiveness with a bare stipulation is meaningless.

It makes no difference that the state court ruled that *Lafler*'s novelty and counsel's stipulation established cause. The cause-and-prejudice standard is a federal rule dictating when federal courts will overlook a procedural default. *See Murray*, 477 U.S. at 489. As it happens, Michigan has adopted the same or nearly the same standard for when *its* courts will excuse a procedural default. Mich. Ct. R. 6.508(D)(3)(a)–(b); *see also People v. Jackson*, 633 N.W.2d 825, 830 (Mich. 2001) (per curiam). But crafting its rule that way was Michigan's choice and the state rule remains just that: a *state* rule. Benton's claim is now in *federal* court, and the existence of cause is "a question of federal law" that we must answer for ourselves under the federal standard. *Murray*, 477 U.S. at 489.

Under that standard, Benton lacks cause to excuse her procedural default. Without cause, we need not consider whether Benton has shown prejudice. We affirm.