**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0445n.06

Case No. 19-1736

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| RANDALL SCOTT OVERTON, | ) | **FILED**<br>Jul 31, 2020<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Petitioner-Appellant, | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| MATT MACAULEY, Warden, | ) | MICHIGAN |
|  | ) |  |
| Respondent-Appellee. | ) | **OPINION** |
|  | ) |  |
|  | ) |  |

BEFORE: DONALD, THAPAR, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. States have broad authority to craft, enact, and interpret their criminal statutes. Although the federal judiciary often acts as a backstop, federalism cautions us against wielding the federal constitution to meddle in state affairs. That said, the Fourteenth Amendment's Due Process Clause requires us to invalidate state court interpretations of criminal statutes so unexpected and indefensible as to penalize behavior previously considered innocent. *See Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964). But this does not mean that every close state-level criminal case warrants federal intervention. Instead, this Court recognizes fair-notice due process violations only when the defendant could not have known that the state criminal statute encompassed his conduct. Liberally permitting fair-notice due process claims to vacate state court decisions would upset the foundational principal that federal judges exercise "neither Force nor

Will, but merely judgment." THE FEDERALIST NO. 78, at 523 (Alexander Hamilton) (J. Cooke ed., 1961).

Overton tells us that his conduct could not have fallen under Michigan's statutory definition of sexual penetration. Because that statute requires an insertion into "the genital or anal openings of *another* person's body," Mich. Comp. Laws Ann. § 750.520a(r) (emphasis added), he argues that coercing or instructing a minor to self-penetrate does not amount to sexual penetration. But even if that interpretation is plausible, Overton needs to meet a higher standard for his fair-notice claim: He must show that the Michigan judiciary rendered an indefensible holding when it found that coerced self-penetration satisfied the statutory definition of sexual penetration. And Overton must also prove that he lacked notice that the Michigan court could render such a ruling. Because other courts have understood near-identical statutes to cover coerced or directed self-penetration, Overton cannot show an error significant enough to warrant habeas relief. We AFFIRM.

I.

Randall Overton lived with his girlfriend, Chrystal Pope, and her minor daughter, D.P. In 2010, D.P.'s biological father informed law enforcement officers that he believed Overton and Pope had sexually abused his daughter. D.P. testified that Overton and Pope had forced her to undergo "virginity checks" when she was eleven years old. (R. 5-10, Trial Tr., Page ID # 717–721, 728.) These incidents involved D.P. fully undressing and displaying her genitals to Overton and Pope. Neither Overton nor Pope touched D.P.'s genitals, yet they instructed her to use her fingers to permit a visual inspection of her vagina. One incident involved D.P. inserting her finger into her vagina to show Overton "where a tampon goes." (*Id.* at 742.)

At trial in Michigan state court, a jury found Overton guilty of first-degree criminal sexual conduct. The controlling statute states: "A person is guilty of criminal sexual conduct in the first

2

degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists: (a) That other person is under 13 years of age . . . ." Mich. Comp. Laws Ann. § 750.520b. And Michigan law defines sexual penetration as: "[S]exual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body[.]" Mich. Comp. Laws Ann. § 750.520a(r). The jury also convicted Overton of second-degree criminal sexual conduct and three counts of gross indecency, which he does not challenge now. The trial court sentenced him to twenty-five to forty years for the first-degree criminal sexual conduct conviction, twenty-nine months to fifteen years for the second-degree criminal sexual conduct conviction, and seventeen months to five years for the three counts of gross indecency, all running concurrently.

Overton appealed his conviction, arguing that the jury had insufficient evidence to convict him of first-degree criminal sexual conduct. He reasoned that he couldn't have violated the sexual penetration statute because neither his body nor an object under his control entered the body of another. But the Michigan appellate court disagreed. It found that Overton "engaged in the intrusion of a human body part—a finger—into the genital opening of another person's body[,]" which violated the governing statute. (R. 1-4, Op. & Order, Page ID # 134.) So Overton filed an appeal with the Michigan Supreme Court, which heard oral argument and called for supplemental briefing on the sufficiency of the evidence claim. *People v. Overton*, 846 N.W.2d 929 (Mich. 2012) (order). Although the Michigan Supreme Court denied Overton's appeal application, Justices Cavanagh and McCormack dissented from that decision. They believed Overton did not penetrate the body of another, which the statute required, because only D.P. performed the penetrative act.

In August 2015, Overton filed a post-conviction motion for relief in the Wayne County Circuit Court. There, he argued: (1) that he lacked fair notice that his conduct constituted sexual

3

penetration under Michigan law, (2) that the jury instructions about the statute were erroneous and thus violated his right to due process, and (3) that he received ineffective assistance of counsel from both his trial and appellate lawyers. The court found against Overton on all issues. Then the Michigan Court of Appeals denied Overton's motion for leave to appeal. And the Michigan Supreme Court also denied Overton's motion for relief.

After failing to secure post-conviction relief in state court, Overton petitioned for a writ of habeas corpus in the Eastern District of Michigan. In his habeas petition, Overton argued, among many claims, that he received insufficient notice that his conduct violated Michigan's first-degree criminal sexual conduct statute and that he suffered ineffective assistance of counsel in his state court proceedings. The district court rejected Overton's claims. This timely appeal followed.

II.

We review a federal court's denial of a state prisoner's habeas corpus petition under "a mixed standard of review," examining "legal conclusions *de novo*" and "factual findings under a 'clearly erroneous' standard." *Kelly v. Lazaroff*, 846 F.3d 819, 827 (6th Cir. 2017) (quoting *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003)). When "the facts are uncontested," as they are here, the district court's habeas ruling is "entirely subject to *de novo* review." *Id.* For petitions filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Circuit:

> [M]ay grant relief on claims "adjudicated on the merits in State court proceedings" only if the challenged adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" to the relevant state court[.]

*O'Neal v. Bagley*, 743 F.3d 1010, 1014–15 (6th Cir. 2013) (citation omitted) (quoting 28 U.S.C. § 2254(d)).

Failure to show a violation of clearly established federal law is fatal to a post-AEDPA challenge. *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013). In short, "[t]o obtain habeas corpus relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). This standard also applies when the state court issues a procedural bar to relief accompanied by an alternative merits ruling. *Brooks v. Bagley*, 513 F.3d 618, 624–25 (6th Cir. 2008).[1] On habeas review, we are "limited to the record that was before the state court that adjudicated the claim on the merits" and cannot consider "evidence presented to the federal habeas court[.]" *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

### III.

A petitioner typically procedurally defaults claims not raised on direct appeal. "[A] federal court usually may not review a state prisoner's habeas claim if (1) the prisoner broke a state procedural rule, (2) the state court enforced the rule, and (3) the procedural forfeiture was an adequate and independent ground for denying relief." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Overton concedes that all three of those criteria are met. Yet procedural default does

---

[1] Although procedural default applies here for reasons discussed below, we also apply AEDPA deference. The Michigan courts did not adjudicate the merits of Overton's fair-notice claim on direct appeal because Overton didn't present that claim to them. But a state court *did* adjudicate the merits of his claim on habeas review, finding that Overton "had sufficient notice that his conduct was unlawful." (R. 5-23, Op., Page ID # 1687.) Rejecting Overton's fair-notice claim constituted a merits decision, even though the state court also found his case procedurally barred. *See Gumm v. Mitchell*, 775 F.3d 345, 362 (6th Cir. 2014) ("[W]here a state court decides a petitioner's claim on alternative grounds, one on the merits and the other on a procedural bar ruling, a federal habeas court may still review that court's merits analysis and apply AEDPA deference to that adjudication.").

not always end a case: A habeas petition can proceed despite containing defaulted claims if the petitioner shows "cause for the default and actual prejudice from the claimed error." *Id.*

Overton argues that his state trial and appellate counsel rendered ineffective assistance, which would excuse his default. It's true that a "way to show cause for a default is to show that appellate counsel's failure to raise the issue was ineffective assistance in its own right." *Id.* That means Overton can escape default by showing ineffective assistance under the familiar test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). That test has two elements: (1) deficient performance by counsel, and (2) prejudice stemming from the deficient performance. *Id.* Deficient performance requires "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* And prejudice means that counsel committed "errors . . . so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* Restated, a successful ineffective assistance claim must show: (1) that counsel's conduct "fell below an objective standard of reasonableness[,]" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000). Yet making a *Strickland* claim on collateral review is no easy task. "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care[.]" *Harrington*, 562 U.S. at 105. In brief, "[s]urmounting *Strickland*'s high bar is never an easy task." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

To begin, the government faults Overton for not discussing procedural default in his opening brief. While that observation is true, it's not fatal. Procedural default is an affirmative defense that the government must raise. *Whiting v. Burt*, 395 F.3d 602, 610 (6th Cir. 2005). And

appellants need not anticipate affirmative defenses in their opening briefs to avoid forfeiture. It's true that appellate briefing "devoid of any affirmative substantive argument maintaining that [the appellant's] . . . claim is not procedurally defaulted" can forfeit a response to the government's assertion of procedural default. *Ivy v. Mills*, 500 F. App'x 475, 478 (6th Cir. 2012). But that's not the case here. Overton's reply brief discusses both cause and prejudice, the two elements required for avoiding default. So Overton didn't forfeit his argument against procedural default.

Overton faults his trial and appellate state court counsel for failing to raise a fair-warning due process claim. He now believes that fair-notice was his strongest argument, yet it neither arose at trial nor on appeal in state court. Instead, Overton's counsel argued that the jury lacked sufficient evidence to convict Overton of first-degree criminal sexual conduct. The government counters by arguing that Overton's counsel made a strategic decision to not discuss fair-notice in order to pursue better claims. Although it's true that omitting claims as trial strategy is not ineffective assistance, *see Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001), the government offers no direct evidence that Overton's counsel omitted fair-notice arguments for strategic purposes. Instead, it identifies weaknesses in Overton's fair-notice claim that purportedly explain why omitting the claim was an easy choice. In essence, the parties' procedural default arguments dispute whether Overton's fair-notice claim had merit: Overton believes that his counsel erred by omitting a winning claim while the government contends that Overton's counsel rightly jettisoned the fair-notice issue as unhelpful. Rephrased, the parties suggest that this issue turns on whether failure to raise a fair-notice claim prejudiced Overton.

Although procedural default often appears as a preliminary question, we may decide the merits first. *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("The U.S. Supreme Court has held that federal courts are not required

to address a procedural-default issue before deciding against the petitioner on the merits.")). This procedural default question turns on whether Overton had a colorable fair-notice claim, so we opt to decide this case on the merits. Because we find Overton's fair-notice claim unavailing, as discussed below, we need not perform a separate procedural default analysis.

IV.

Habeas petitioners must show that the state proceedings either (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision runs contrary to federal law if it "contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 405–06. And a state court performs an unreasonable application of facts if it "identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous," but rather "must have been 'objectively unreasonable.'" *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)). That analysis demands giving "state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* (quoting *Woods v. Donald*, 575 U.S. 312, 315 (2015) (per curiam)). So Overton must show that the Michigan state court deviated from

settled federal law or performed an unreasonable factual application; otherwise his habeas petition fails.

Supreme Court precedent establishes criminal defendants' right to fair notice that their conduct was prohibited by a criminal statute. This line of cases tells us that, under the Due Process Clause, both inscrutably vague statutory language and "unforeseeable and retroactive judicial expansion of narrow and precise statutory language" violate the due process "right of fair warning." *Boui*e, 378 U.S. at 352. By engaging in "unforeseeable judicial enlargement of a criminal statute," courts punish conduct that was perfectly legal until the case's conclusion. *Id.* at 353. Such a holding works "precisely like an ex post facto law, such as Art. I, [§] 10, of the Constitution forbids." *Id.* So the Due Process Clause requires vacating state court judgments that turn on an "unexpected and indefensible" construction of a criminal statute. *Id.* at 354 (quoting HALL, GENERAL PRINCIPLES OF CRIMINAL LAW 61 (2d ed. 1960)); *see also Rogers v. Tennessee*, 532 U.S. 451, 461 (2001) (quoting *Bouie*, 378 U.S. at 354 ("*Bouie* restricted due process limitations on the retroactive application of judicial interpretations of criminal statutes to those that are 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'")). In sum, "fair notice cases 'involve [] judicial decisions that allegedly retroactively converted an innocent act into a crime.'" *Kelsey v. Pope*, 809 F.3d 849, 866 (6th Cir. 2016) (quoting *Webb v. Mitchell*, 586 F.3d 383, 393 (6th Cir. 2009) (alteration in original)).

Overton argues that he lacked fair notice that Michigan's first-degree sexual criminal conduct statute encompassed forcing D.P. to undergo virginity checks and directing her to self-penetrate. He alleges that coerced self-penetration "does not satisfy the element of sexual penetration" required by Michigan's first-degree criminal sexual conduct statute. (Appellant's Br. at 19.) Because D.P. penetrated herself, Overton claims that no penetration "of another person's

body" could have occurred, as required by Mich. Comp. Laws Ann. § 750.520a(r). This reasoning echoes the dissenting Michigan Supreme Court Justices from Overton's direct appeal, who both read the statute's text as excluding self-penetration. It's true that fair-notice claims can invalidate state court decisions "so clearly at variance with the statutory language [that they] ha[ve] not the slightest support in prior [state court] decisions." *Bouie*, 378 U.S. at 356. But even if Overton offers a plausible, perhaps even the best, reading of the statute, our analysis focuses on whether Overton had fair notice that Michigan courts could have found that his conduct violated the first-degree criminal sexual conduct statute.

To his credit, Overton offers a handful of cases in which other jurisdictions have held that statutory language referencing "another" requires two actors committing the conduct. *See State v. Bryant*, 670 A.2d 776, 779 (R.I. 1996) (concluding that telling another person to penetrate herself did not constitute sexual penetration under a statute nearly identical to Michigan's); *United States v. Yonan*, 622 F. Supp. 721, 723 (N.D. Ill. 1985) (reasoning that a solo practitioner could not be employed by another person). But those cases only show that the state court could have possibly ruled in Overton's favor, and not that a failure to do so was unexpected and indefensible. And that shortcoming is decisive.

Until Overton's case, Michigan courts had never decided whether coerced self-penetration fell under Michigan's sexual penetration statute. But other jurisdictions have interpreted similarly worded statutes to cover conduct nearly identical to Overton's. For instance, the Ninth Circuit held that a defendant who caused "his victim to penetrate herself" committed sexual penetration under a Guam statute identical to Michigan's. *Guam v. Quidachay*, 374 F.3d 820, 822 (9th Cir. 2004). There, the victim's "finger became an object operating at [the defendant's] command. [The defendant] successfully and criminally intruded with this object into a body which was not his. . .

. He engaged in sexual penetration with the victim." *Id.* Considering similarities between the conduct and the statute here and those in *Quidachay*, it seems unlikely that Overton's state criminal conviction and unsuccessful appeal were so unexpected and heterodox as to offend the Due Process Clause.

What's more, other state courts have found that digital self-penetration at another's behest can amount to sexual penetration when the victim's finger acts as the defendant's "object." *See Kirby v. State*, 625 So. 2d 51, 55 (Fla. Dist. Ct. App. 1993) (finding conduct identical to Overton's to constitute sexual penetration); *People v. Keeney*, 29 Cal Rptr. 2d 451, 453 (Cal. Ct. App. 1994) (same). In the end, Overton only needed to know that his conduct was punishable under the statute, and not under the exact rationale the Michigan court would use. *See Kelsey*, 809 F.3d at 866 (underscoring the "emphasis on the retroactive criminalization of *conduct* in examining fair notice challenges"). Both *Kirby* and *Keeney*, which held that forced self-penetration constituted sexual penetration under similar statutes as Michigan's, suggest that a state court could have found Overton's conduct criminalized by the Michigan statute.

This is not to say that this Court holds defendants responsible for knowing every holding in every jurisdiction before asserting a fair-notice violation. *See Rogers*, 532 U.S. at 464 ("Due process, of course, does not require a person to apprise himself of the common law of all 50 States in order to guarantee that his actions will not subject him to punishment[.]") After all, "[i]t would be a rare situation in which the meaning of a statute of another State sufficed to afford a person 'fair warning' that his own State's statute meant something quite different from what its words said." *Bouie*, 378 U.S. at 359–60.

But even if this is not one of those rare situations in which state court decisions can provide notice, *Kirby* and *Keeney* still weigh against Overton on the AEDPA deference issue. Under

11

AEDPA, Overton must show that a state court committed "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Given that multiple jurisdictions rejected Overton's theory, or at least decided against defendants in near-identical cases, it's difficult to say that a Michigan court issued a ruling against Overton that would have been thought impossible. So AEDPA deference bars Overton's claim, independent of whether *Kirby* and *Keeney* can show that Overton had notice that his conduct could have been found criminal.

On top of that, surveying cases applying similar laws to similar facts reveals that the Michigan Supreme Court employed reasoning within the jurisprudential mainstream. Without a Michigan case placing self-penetration outside the sexual penetration statute's ambit, Overton's allegedly upended expectations could have been informed only by interpretations from other jurisdictions or by the statute's language. If the former, then statutory interpretation performed in other jurisdictions shows that any error committed by the Michigan courts was not so unprecedented as to meet the AEDPA deference standard. If the latter, then Michigan gave Overton no precedent on which to establish expectations about how it would resolve the self-penetration question. *See Metrish*, 569 U.S. at 367–68 (expressing doubt that a fair-notice due process violation arises when state supreme courts "squarely address[] a particular issue for the first time").

All that remains is the text itself. And we believe the Michigan Court of Appeals delivered a defensible explanation about how Overton's role in the intrusion of a body part into the body of another violated the statute. Overton caused D.P.'s penetration and D.P. was another person, so we recognize the logic driving the decisions below. Again, at a minimum, Overton does not show that his conviction rested on "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 358 (quoting *Harrington*, 562 U.S. at 103). To

be clear, we do not opine on whether the statute compelled the Michigan Court of Appeals to uphold Overton's conviction nor do we endorse that court's statutory interpretation as superior to Overton's. So we refrain from speculating about where to draw the line between criminal and innocent conduct under Michigan's statute. In the end, we side with the government only because the state courts did not commit such an unprecedented or egregious statutory interpretation error as to permit relief under AEDPA.

V.

For these reasons, we AFFIRM.