NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0238n.06

Case No. 21-3372

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 15, 2022
DEBORAH S. HUNT, Clerk

PATRICK SHANK,

    Petitioner-Appellant,

v.

DAVE MARQUIS, Warden,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

OPINION

Before: STRANCH, DONALD, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Patrick Shank was convicted of raping a young girl multiple times, often after plying her with copious amounts of alcohol. He now requests we unwind his conviction because his defense attorney failed to call an alibi witness at trial. But he did not timely raise this claim in state collateral proceedings and cannot make the necessary showing to excuse this procedural default. Thus, he cannot obtain federal habeas relief. We affirm.

I.

We divide our discussion into two parts. First, we lay out Shank's winding path to federal collateral review today. Then we explain why he cannot overcome the bar of procedural default.

\*     \*     \*

In 2012, state prosecutors charged Shank with twelve counts of rape. Represented by counsel, Shank waived his right to a jury in favor of a bench trial. During that trial, one of Shank's victims, A.M., testified that she began babysitting for Shank and his wife in 2002, when she was twelve years old. On June 10, 2003, Shank gave A.M. alcohol until "she was so intoxicated" that

she "felt as though she was spinning." R. 27-2, Pg. ID 3867. As A.M. was "blacking in and out," Shank raped her. *Id.* For the next year, Shank continued to have sex with her a few times every week. In total, A.M. estimated that Shank raped her over 100 times.

Shank, who starred in a local band, had perfected his routine. A.M. would attend his band practices and shows. At concerts, Shank arranged for A.M. to wear wristbands that indicated she was over twenty-one years old so he could buy her alcohol. At every show, A.M. would drink to the point of intoxication. Shank would then force himself onto her. A.M. maintained that she never voluntarily had sex with Shank. But she "was always scared because he was much larger than her." *Id.* at 3869. Shank also told her that "no one would believe her if she said anything about it." *Id.*

A.M. did not report these incidents until 2012, when she read a newspaper article disclosing that Shank was on trial for charges related to illegal sexual behavior against another individual. Until then, A.M. had not known that Shank had assaulted other girls and "felt like it was [her] job . . . to come forward." R. 24-1, Pg. ID 1949. In addition to A.M.'s testimony, the State also offered the testimony of E.B., one of A.M.'s childhood friends who often accompanied A.M. to Shank's shows and band practices. E.B. testified that on May 8, 2004, Shank and one of his bandmates brought the girls to the bandmate's apartment after a concert to drink more alcohol. E.B. said she saw Shank "with his pants down in between [A.M.'s] legs" and he was "kind of holding her arms down." R. 24-3, Pg. ID 2050. That night, A.M. also told E.B. she was "upset" because "this was not the first time that [Shank] did that to her." *Id.* The State also offered the testimony of R.A., who said that Shank had raped her multiple times when she was thirteen years old. R.A. testified that Shank told her "not to tell anyone because he could mess up [her] life and . . . that no one

would believe [her]." *Id.* at 2076. After finding him guilty of three counts of rape and nine counts of sexual battery, the trial court sentenced him to nine years' imprisonment.[1]

On direct appeal, Shank got new counsel and made five arguments. None of the arguments faulted the trial counsel for failing to call an alibi witness. The state appellate court affirmed. And after the Ohio Supreme Court declined to hear his case, Shank chose not to file a timely petition for certiorari in the U.S. Supreme Court.

Shank had one more move to make. Ohio offers defendants a path for postconviction relief under Ohio Revised Code § 2953.21. That avenue enables defendants to press claims of ineffective assistance of trial counsel that rely on evidence outside the record. *Stojetz v. Ishee*, 892 F.3d 175, 192 (6th Cir. 2018). But there's a catch. At the time, Ohio required defendants to file their petitions for postconviction relief within 180 days of the trial transcript's filing. *See* Ohio Rev. Code § 2953.21(A)(2) (2014).[2] Shank missed this deadline. His petition was untimely by almost three years.

In this petition, Shank alleged that his trial counsel was constitutionally defective for failing to call Ed Huffman, Shank's work supervisor and band manager, as an alibi witness. According to Shank, Huffman would have testified that Shank was at work during two of the days when A.M. alleged that he raped her. Along with his own sworn testimony, Shank submitted an affidavit from Huffman along with an affidavit from Nancy Coe, his close friend and neighbor.

---

[1] The trial court sentenced Shank to serve this sentence consecutively to a six-year sentence he received for a separate set of convictions. *See State v. Shank* (*Shank I*), No. 12CA0104-M, 2013 WL 6497961, at *3 (Ohio Ct. App. Dec. 9, 2013). In *Shank I*, a jury found Shank guilty of sexual battery, unlawful sexual conduct with a minor, and two counts of contributing to the unruliness or delinquency of a minor. *Id.* at *1. R.A. was the victim in *Shank I*.

[2] Ohio later extended this deadline to 365 days. *See* Ohio Rev. Code § 2953.21(A)(2)(a).

But Ohio trial courts ordinarily lack the authority to entertain claims that are brought in untimely petitions for postconviction relief. Under state law, the trial court may consider untimely claims only if the petitioner can show that he was (1) "unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief" and (2) the petitioner can show by "clear and convincing evidence that, but for the constitutional error at trial, no reasonable factfinder would have found the petitioner guilty." Ohio Rev. Code § 2953.23(A)(1)(a)–(b).

Shank stumbled at the first step. Ohio courts generally cannot entertain an untimely petition when the defendant "knew of the facts supporting his petition for post-conviction relief at the time of trial." *State v. Wells*, No. 2010 CA 5, 2010 WL 2706321, at *5 (Ohio Ct. App. July 9, 2010). The trial court pointed out that Shank's ineffective-assistance-of-trial-counsel claim rested on precisely such facts. No one could doubt that Shank "knew his work history and schedule at the time of trial." R. 27-2, Pg. ID 4145. What's more, Shank did not allege "that he was unable to contact [Huffman and Coe] to get timely affidavits." *Id.* at 4146. Indeed, the evidence pointed in the other direction. Both Coe and Huffman were Shank's close friends. Thus, the trial court denied his request for postconviction relief.

Shank timely appealed this order denying postconviction relief. His sole claim on appeal was that the trial court abused its discretion in finding that he did not satisfy section 2953.23(A)(1)(a)'s requirement that he was "unavoidably prevented from discovery of the facts upon which" he relied to present his ineffective assistance of trial counsel claim. In affirming the trial court, the state appellate court found that Shank's own affidavit "essentially acknowledges the facts he sought to rely on were available prior to the statutory deadline." R. 31-1, Pg. ID 5921. Indeed, the state appellate court found that the trial court record included a notice of alibi which

stated that Shank "will seek to introduce evidence and testimony, not only from himself, but from other witnesses, that during the time period(s) of the alleged offenses [Shank] was at home or in the presence of others and not at the situs of the alleged criminal activity charged in the indictment." Appellee Br. 3. The trial record also contained a subpoena to Shank's employer to provide all relevant documents that showed Shank's work history during the relevant months when A.M. alleged that he repeatedly raped her. In other words, the record suggests that Shank had access to these facts at trial, well before the deadline for postconviction relief had passed. The Ohio Supreme Court then declined to hear Shank's collateral appeal.

With nowhere left to turn in state court, Shank filed a petition for writ of habeas corpus in federal district court. Though amended twice, Shank's habeas petition was not a model of clarity. He pressed six claims for relief. But those efforts bore no fruit. The district court adopted the magistrate judge's report and recommendation denying or dismissing each claim.

Among these claims, Shank alleged that the "trial court abused its discretion in dismissing Shank's Petition for Post-Conviction Relief and Rule 26(b) Motion, and therefore, Shank's Due Process rights and right to effective assistance of Counsel pursuant to the Sixth and Fourteenth Amendments of the United States Constitution were violated; cause exists for procedural default, and the doctrine of actual innocence applies." CA6 R. 11, at 4. In the body of his brief, Shank elaborated without shedding much more light. He maintained that the state court "erred in concluding that his petition for post-conviction relief was untimely; that his post-conviction counsel was at fault; and that his alibi witness establishes his actual innocence." *Id.* The district court denied relief on this claim after construing it as an impermissible attack on the procedural determinations that Ohio's state court made during collateral proceedings.

But this court saw things differently. To be sure, we recognized that Shank's "[p]etition appears to allege that the Ohio Court of Appeals erred as a matter of state law in concluding that his petition for post-conviction relief was untimely." *Id.* at 4–5. But we found that Shank's brief could also be read as arguing that he can make a showing to excuse his procedural default. We granted Shank a certificate of appealability on his claim that his trial counsel erred by failing to call Huffman as an alibi witness.

B.

The procedural default doctrine precludes federal review if the petitioner has failed to follow the state's procedural requirements for presenting his claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, we will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgment.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quoting *Coleman*, 501 U.S. at 729).

Our circuit consults a four-part test to decide whether a petitioner has procedurally defaulted his claim. A petitioner procedurally defaults a claim if (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). In this case, Ohio's postconviction trial court refused to hear Shank's ineffective-assistance-of-trial-counsel claim because he did not file a timely petition. That

failure constitutes an adequate and independent state ground for our denying relief. *Hartman v. Bagley*, 492 F.3d 347, 357–58 (6th Cir. 2007). Shank and the State agree on this much. Where they differ, however, is whether Shank can demonstrate cause and prejudice to excuse the procedural default.

Shank attempts to revive his defaulted ineffective-assistance-of-trial-counsel claim by pointing to the ineffective assistance of his appellate counsel. Shank says that his appellate counsel told him that his direct appeal "was the way to handle all matters," including the ineffective-assistance-of-trial-counsel claim. R. 25-1, Pg. ID 3252. Shank adds that he was under the impression that his appellate counsel would file a postconviction petition on his behalf when necessary. Yet Shank's appellate counsel never filed such a petition. And Shank "had no idea that [he] had only 180 days to file the motions for post conviction relief" until after the deadline had passed. *Id.* at 3236.

To be sure, Shank can find some support in our caselaw. In the byzantine world of federal habeas, petitioners can excuse their procedural default of an ineffective-assistance-of-trial-counsel claim by pointing to the ineffective assistance of counsel at a later stage in the proceedings. *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478, 492 (1986). In *Gunner v. Welch*, for example, we found that the failure of appellate counsel to inform Gunner of the time limit for pursuing a postconviction petition constituted ineffective assistance of appellate counsel and, thus, cause to excuse Gunner's procedurally defaulted ineffective-assistance-of-trial-counsel claim. 749 F.3d 511, 515–16 (6th Cir. 2014). Under *Gunner*, Shank's claim that his appellate counsel was ineffective on direct appeal for failing to advise him of Ohio's 180-day deadline for postconviction

petitions is a cognizable ground for excusing the procedural default of his ineffective-assistance-of-trial-counsel claim.[3]

But there's a threshold limit that Shank fails. It is a familiar maxim of federal habeas that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). That is precisely what happened here. In Ohio, prisoners such as Shank must press their ineffective-assistance-of-appellate-counsel claims in an application filed under Ohio Appellate Rule 26(B). *See Carter v. Mitchell*, 693 F.3d 555, 564 (6th Cir. 2012) (explaining that an ineffective-assistance-of-appellate-counsel claim "must be raised through an application to reopen the direct appeal" under Rule 26(B)); *see also Williams v. Lazaroff*, 648 F. App'x 548, 553 (6th Cir. 2016). Moreover, an application under this rule must be filed within ninety days of "the journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." Ohio App. R. 26(B)(1). Shank missed this deadline too. He filed his application about eighteen months after the appellate court's decision. Nor could he show good cause. So the state court rejected his application without passing on the merits of his ineffective assistance of appellate counsel claim.

Under our caselaw, we treat such untimely Rule 26(B) applications as another adequate and independent state ground to bar federal relief—or in this case, consideration of Shank's ineffective-assistance-of-trial-counsel claim. *See, e.g.*, *Scuba v. Brigano*, 527 F.3d 479, 485 (6th Cir. 2007). Our decision in *Lazaroff* is instructive. There, like here, the petitioner procedurally

---

[3] Because we hold that Shank procedurally defaulted his ineffective-assistance-of-appellate-counsel claim, we do not need to extend beyond what *Gunner* has already held for purposes of this case. In other words, we hold only that Shank's appellate counsel was constitutionally ineffective for failing to advise him of the deadline for seeking state postconviction relief. We do not need to decide, for instance, whether an appellate counsel is constitutionally ineffective for neglecting to tell his client that his claims should be raised in a postconviction petition.

defaulted an ineffective-assistance-of-trial-counsel claim because he did not file a petition for postconviction relief. 648 F. App'x at 552. And like here, the petitioner argued that his procedural default should be excused because his appellate counsel was ineffective for failing to advise him on the deadline for filing a petition. *Id.* But we found that the petitioner had procedurally defaulted his ineffective-assistance-of-appellate-counsel claim because he did not raise it in his Rule 26(B) application and could not show cause and prejudice. *Id.* at 553. The same applies here. Shank has made no mention of Rule 26(B) on appeal, much less that he can show cause and prejudice. That alone is dispositive.

Indeed, in rejecting his untimely Rule 26(B) motion, the state appellate court found that Shank "makes no argument that good cause exists for the untimely filing of his application." R. 27-2, Pg. ID 4034. At most, Shank maintained in his Rule 26(B) application that he was not aware of the ninety-day limit until it had passed. We have not lent a receptive ear to such arguments in the past. It is well settled that "lack of effort" or "ignorance of the law" are not circumstances that establish cause to excuse a procedural default. *Monzo v. Edwards*, 281 F.3d 568, 578 (6th Cir. 2002) (citation omitted). As Shank brings no other argument before us, we conclude that his ineffective-assistance-of-appellate-counsel claim has been procedurally defaulted and, thus, cannot serve as cause to excuse his untimely petition for postconviction relief.

C.

Shank's alternate route for excusing the procedural default of his ineffective-assistance-of-trial-counsel claim is to make a credible showing of actual innocence. This inquiry focuses on legal proof. The petitioner must establish with new reliable evidence that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The *Schlup* standard is a deliberately "demanding" bar reserved

for "extraordinary" cases. *House v. Bell*, 547 U.S. 518, 538 (2006) (citation omitted). A petitioner's showing of a credible claim of innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup*, 513 U.S. at 315 (quoting *Herrara v. Collins*, 506 U.S. 390, 404 (1993)).

Because a gateway-innocence claim "involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record." *House*, 547 U.S. at 538. We may, among other things, "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of new evidence." *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018) (cleaned up). Shank's petition does not clear the high hurdle of actual innocence.

We begin with the significant evidence of Shank's guilt that Ohio put forth. To start, A.M. testified in great detail about how she began to babysit for Shank and how he raped her dozens of times over many months. The State also presented the testimony of E.B., A.M.'s friend, to corroborate A.M.'s testimony. E.B. testified that she saw Shank have sex with A.M. on May 8, 2004. She also testified that A.M. told her this was not the first time Shank had raped her. A police officer charged with investigating A.M.'s allegations also corroborated important details of her testimony, such as her description of a recording studio in Cleveland where Shank allegedly raped her. Another woman, R.A., also testified that Shank had raped her multiple times when she was thirteen years old. Like A.M., R.A. testified that Shank invited her to parties or band rehearsals at his house.

To refute these witnesses and the State's other evidence, Shank points to Huffman's affidavit. As Shank's work supervisor, Huffman had handwritten business records noting which employees worked which days. These records indicate that Shank was at work on June 10 and June 11, 2003, the two days when A.M. alleged that Shank first raped her. But this evidence is not the sort that would undermine our confidence in the outcome of Shank's state trial. Much of Huffman's testimony can be reconciled with the prosecution's theory. For starters, it is not inconceivable that Shank arrived at work late or left early on those days. Indeed, Huffman's affidavit tells us that Shank "normally arrived [at work] by 7:10 am and would leave by 4:15pm." R. 27-2, Pg. ID 3955. Huffman's affidavit does not tell us, however, whether Shank was at work during those exact hours on June 10 and June 11.

A reasonable juror would also consider three other factors that cut against Shank's innocence. First, A.M. was a young child when Shank raped her. When she testified at trial in 2014, a dozen years had passed since these alleged crimes took place. It is entirely plausible that she would forget the precise date when Shank first raped her. And that's especially true given she testified that he raped her roughly 100 times. Second, Huffman's evidence does not speak to any of those other instances including May 8, 2004, when both A.M. and E.B. testified that Shank raped her in his bandmate's apartment. By contrast, an investigator independently corroborated A.M.'s testimony about specific details of the recording studio where she would watch Shank's band play. Third, Huffman is not a disinterested party in these proceedings. He was the manager of Shank's band and one of his close friends. Thus, a reasonable juror could discount his work records and other evidence as a last-ditch effort to exculpate his friend.

In sum, Shank's alibi evidence does not move the needle. When viewed in light of the whole record, we cannot agree "that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. Thus, we decline to resurrect Shank's procedurally defaulted ineffective-assistance-of-trial-counsel claim

We affirm.